1  LOEB & LOEB LLP
   MICHAEL ANDERSON (State Bar No. 143168)
2  manderson@loeb.com
   DONALD A. MILLER (State Bar No. 228753)
3  dmiller@loeb.com
   LOEB & LOEB LLP
4  10100 Santa Monica Boulevard, Suite 2200
   Los Angeles, California 90067-4120
5  Telephone:  310-282-2000
   Facsimile:  310-282-2200
6
   Attorneys for Defendant
7  WILLIAM PAUL YOUNG

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                 WESTERN DIVISION

11

12  WAYNE JACOBSEN, an individual;     )   Case No.  CV 10-3246 JFW (JCx)
    BRAD CUMMINGS, an individual,      )
13                                     )   Assigned to the Hon. John F. Walter
            Plaintiffs,                )
14                                     )
         v.                            )
15                                     )   **MEMORANDUM OF POINTS AND**
    WILLIAM PAUL YOUNG, an             )   **AUTHORITIES IN SUPPORT OF**
16  individual; and DOES 1-10, inclusive )  **DEFENDANT YOUNG'S MOTION**
                                       )   **TO DISMISS PLAINTIFFS' FIRST**
17          Defendants.                )   **CLAIM FOR RELEIF FOR**
                                       )   **DECLARATORY RELIEF AND**
18                                     )   **DISMISS OR STAY THE SECOND**
                                           **CLAIM FOR RELIEF FOR**
19                                         **BREACH OF CONTRACT**

20                                         *[Notice of Motion and Motion; Request*
                                           *for Judicial Notice; Declaration of*
21                                         *Michael T. Anderson]*

22

23                                         Date:        August 9, 2010
                                           Time:        1:30 p.m.
24                                         Courtroom:  16

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
                                           IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND....................................4

    A.   In the Publishing Contract Between Windblown and Young, Plaintiffs Admit Young is the Author and Copyright Owner of the Book. .........................................................4

    B.   In the Copyright Registration Filed by Plaintiff Brad Cummings on Behalf of Windblown, Plaintiffs Admit Young is the Author and Copyright Owner of the Book. ...................5

    C.   In the Letter of Understanding, Plaintiffs Admit Young is the Author and Copyright Owner of the Book. ...................6

    D.   In the Co-Venture Agreement with Hachette, Plaintiffs Admit Young is the Author and Copyright Owner of the Book....................................................................................6

    E.   Young Files the State Court Action .....................................7

    F.   Defendants in the State Court Action Unsuccessfully Demur and Move to Strike Mr. Young's Complaint. ............7

    G.   Windblown Files Its Cross-Complaint in the State Court Action. .............................................................................8

    H.   Plaintiffs File the Federal Court Action Containing the Same Allegations as Those in the Cross-Complaint...........8

III.  DISCUSSION ...................................................................................10

    A.   Because Plaintiffs Agreed Mr. Young is the Author of the Book, Plaintiffs' First Claim Fails to State a Claim as a Matter of Law. .............................................................10

    B.   The Court Should Dismiss or Stay the Second State Law Claim Because it is Duplicative of Issues Currently Pending in the State Court Action .......................................13

        1.   The Court Should Stay the Second Claim Pursuant to the Younger Abstention Doctrine.........................14

        2.   The Court Should Stay the Second Claim Pursuant to the Colorado River Doctrine ................................16

IV.   CONCLUSION..................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Aalmuhammed v. Lee,
202 F.3d 1227 (9th Cir. 2000).............................................................1, 10, 13

American Int'l Underwriters (Phillipines), Inc. v. Continental Ins. Co.,
843 F.2d 1253 (9th Cir.1988).............................................................17

American Title Ins. Co. v. Lacelaw Corp.,
861 F.2d 224 (9th Cir.1988).............................................................10

Childress v. Taylor,
945 F.2d 500 (2d Cir. 1991).............................................................10

Colorado River Water Conservation Dist. v. United States,
424 U.S. 800 (1976) ........................................................... Passim

Delta Dental Plan of California v. Mendoza,
139 F.3d 1289 (9th Cir. 1998).............................................................16

Durning v. First Boston Corp.,
815 F.2d 1265 (9th Cir.1987).............................................................11

Eisenman Chemical Co. v. NL Industries, Inc.,
595 F.Supp. 141 (D.C. Nev. 1984) .............................................................13

Fireman's Fund Ins. Co. v. Quackenbush,
87 F.3d 290 (9th Cir. 1996).............................................................17

Gilbertson v. Albright,
381 F.3d 965 (9th Cir. 2004).............................................................15

Green v. City of Tucson,
255 F.3d 1086 (9th Cir. 2001).............................................................16

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,
896 F.2d 1542 (9th Cir.1990).............................................................10

Juidice v. Vail
430 U.S. 327 (1977) .............................................................15

1

Page(s)

Luna v. Kemira Specialty, Inc.,
    575 F.Supp.2d 1166 (C.D. Cal. 2008)................................................................11

Middlesex County Ethics Committee v. Garden State Bar Ass'n,
    457 U.S. 423 (1982) ........................................................................ 3, 14-15

Mission Oaks Mobile Home Park v. City of Hollister,
    989 F.2d 359 (9th Cir. 1993)................................................................15

Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,
    460 U.S. 1 (1983) ........................................................................ 16-18

Nakash v. Marciano,
    882 F.2d 1411 (9th Cir. 1989)................................................................17

New Orleans Public Service, Inc. v. Council of New Orleans,
    491 U.S. 350, 370 (1989)................................................................15

Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,
    163 F.3d 449 (7th Cir.1998)................................................................11

Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,
    558 F.2d 1090 (2nd Cir. 1977)................................................................13

Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v. Nelson,
    477 U.S. 619 (1986) ........................................................................ 14-15

Pennzoil Co. v. Texaco, Inc.,
    481 U.S. 1 (1987) ........................................................................15

Richlin v. Metro-Goldwyn Mayer Pictures, Inc.,
    531 F.3d 962 (9th Cir. 2008)........................................................................1, 10

Romine v. Compuserve Corporation,
    160 F.3d 337 (6th Cir.1998)................................................................18

Saunders v. Knight,
    CV 04-5924 REC LJO, 2006 WL 224426 (E.D.Cal. Jan. 25, 2006) .......... 11-12

Thompson v. Illinois Dep't of Professional Regulation,
    300 F.3d 750 (7th Cir. 2002)................................................................2, 11, 13

**Page(s)**

Woods v. Asset Resources,
    CV 06-398 SMS, 2006 WL 3782704 (E.D.Cal. Dec. 21, 2006)........................11

Younger v. Harris,
    401 U.S. 37 (1971) ............................................................... 3, 13-15

STATUTES

17 U.S.C. § 106(2) ............................................................12

17 U.S.C. § 410(c).............................................................2, 12

17 U.S.C. § 506(e)............................................................ 6-7, 9, 12

17 U.S.C. § 506(e):............................................................ 5-6

OTHER AUTHORITIES

Fed. R. Civ. Proc. 10(c)............................................................10

Federal Rules of Civil Procedure Rule 12(b)(6) ...............................13

William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial
    § 2:1291.1a (The Rutter Group 2009).................................................14

William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial
    § 2:687.1 (The Rutter Group 2009)....................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant William Paul Young is the author of *The New York Times* bestselling Christian novel *The Shack*.  In November 2009, Mr. Young filed a Complaint in California state court (the "State Court Action") against its publishers Windblown Media, Inc. ("Windblown") and Hachette Book Group, Inc. ("Hachette") for failing to properly account and pay to him his contractual royalty and share of net profits for the novel.  After losing three related motions in the State Court Action, Windblown filed a Cross-Complaint against Mr. Young alleging that he has refused to dispose of the motion picture rights in the work pursuant to a May 1, 2008 Letter of Understanding.

Now, Windblown's principals, Plaintiffs Brad Cummings and Wayne Jacobsen ("Plaintiffs"), have filed this federal court action alleging two claims against Mr. Young:  (1) a declaratory relief claim in which Plaintiffs belatedly seek co-authorship credit for *The Shack* (the "Book"), despite signing at least three agreements (attached to Plaintiffs' first amended complaint) that recognize Mr. Young as the sole author of the Book, registering the Book with the Copyright office in Mr. Young's name alone, and publishing the Book in Mr. Young's name for over three years; and (2) a claim for breach of the Letter of Understanding, which is nearly identical to the claim alleged by Windblown in the State Court Action.  Neither claim belongs in federal court and both should be dismissed.

First, Plaintiffs' first cause of action for declaratory relief under the Copyright Act, seeking a declaration that they are the co-authors of the Book, fails to state a claim upon which relief can be granted.  In determining a claim of joint authorship in a work under the Copyright Act, "[a] contract evidencing intent to be or not to be coauthors is dispositive."  <u>Richlin v. Metro-Goldwyn Mayer Pictures, Inc.</u>, 531 F.3d 962, 969 (9th Cir. 2008); <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227, 1233, 1235 (9th

1  Cir. 2000) ("the best objective manifestation of a shared intent, of course, is a
2  contract saying that the parties intend to be or not to be co-authors").

3      Plaintiffs' inconsistent allegations in their first amended complaint ("FAC")
4  notwithstanding,[1] Plaintiffs repeatedly agreed – in the three different contracts
5  attached to the FAC – that Mr. Young is the sole author of the Book:

6          •   Plaintiffs admit in the May 10, 2008 Publishing Contract that Mr.
7          Young is the sole author.   FAC, Ex. A at Recital ("William P. Young, 1857
8          SW 35th Street, Gresham Oregon 97080 (the "Author")), ¶ 10 ("The Publisher
9          agrees to submit an application for registration of the copyright in the Work in
10         the name of the Author . . . William P. Young"), p.*11 (signature line:
11         "Author: William Paul Young").

12         •   Plaintiffs admit in the May 1, 2008 Letter of Understanding that
13         Mr. Young is the author.  FAC, Ex. B ("This letter is to memorialize our
14         understanding . . . with regards to the motion picture rights to the literary
15         work entitled THE SHACK . . . written by William P. Young.").

16         •   Plaintiffs admit in the May 13, 2008 Publishing Co-Venture
17         Agreement that Mr. Young is the sole author.  FAC, Ex. C at p.*1
18         ("WHEREAS, WINDBLOWN has published an important literary work
19         entitled The Shack by William P. Young").

20     Additionally, Plaintiffs admit they themselves filed a Copyright Registration
21 ("CR") (also attached to the FAC) listing Mr. Young as the sole author of the Book.
22 FAC ¶ 16 (Plaintiff "Cummings submitted a copyright registration . . . which
23 identified Young as the author of the book."); see also FAC, Ex. D at pp.*3-4.
24 Under the Copyright Act, the CR "constitutes prima facie evidence of the validity of
25 the copyright *and of the facts stated in the certificate*."  17 U.S.C. § 410(c)

26 _____

27 [1] Thompson v. Illinois Dept. of Prof. Reg., 300 F.3d 750, 754 (7th Cir. 2002)
   ("when a written instrument contradicts allegations in a complaint to which it is
28 attached, *the exhibit trumps the allegations*.") (emphasis original).

(emphasis added).  Because Plaintiffs admit throughout the FAC that they agreed Mr. Young is the sole author of the Book, their claim for a declaration that they are now co-authors fails to state a claim and should be dismissed with prejudice.[2]

Second, the Court should dismiss or stay the second claim for relief – pursuant to the <u>Younger</u> abstention doctrine or the <u>Colorado River</u> doctrine – because Plaintiffs' breach of contract claim is identical to and duplicative of Windblown's breach of contract action in the State Court Action.  Most of the language in Windblown's Cross-Complaint in the State Court Action is identical to that in the FAC in the instant case.  Most significantly, the agreement that Plaintiffs allege in the FAC that Young supposedly breached – the so-called Letter of Understanding (<u>see</u> FAC ¶ 47) – is already in issue in the State Court Action.  Anderson Decl., ¶ 4, Ex. 3  [Cross-Compl. ¶ 21(d)]; FAC ¶ 28(d).  Plaintiffs allege – in both the State Court Action and in this case – that Young breached the Letter of Understanding.  Cross-Compl. ¶ 30; FAC ¶ 37.  Not surprisingly, Plaintiffs' claim for damages in the instant case and in the State Court Action in connection with Young's alleged breach of the Letter of Understanding is exactly the same.  Cross-Compl. ¶ 39; FAC ¶ 49.

The Court should stay the breach of contract claim pursuant to the <u>Younger</u> abstention doctrine, because the State Court Action (1) was already pending for months before Plaintiffs filed the Complaint; (2) provides Plaintiffs an adequate opportunity to raise any claims; and (3) serves an important state interest, namely, the ability of a state court to adjudicate claims without federal court interference.  <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431

---

[2] Plaintiffs' apparent claim is that because Mr. Young allegedly breached his agreement to dispose of the motion picture rights to the work pursuant to the partially executed May 1, 2008, Letter of Understanding, they now want to tear up their agreements regarding authorship and rewrite three years of publishing history.  FAC ¶¶ 37, 40.

1   (1982).  Similarly, and alternatively, pursuant to the <u>Colorado River</u> doctrine, the

2   Court, in an exercise of "wise judicial administration," should stay the second claim

3   for relief since it is substantially similar to the claims in the State Court Action and

4   would lead to inconsistent, piecemeal litigation in two forums.  <u>Colorado River</u>

5   <u>Water Conservation Dist. v. United States</u>, 424 U.S. 800, 815 (1976).

6          For all of these reasons, Plaintiffs' Complaint should be dismissed.

7   **II.     FACTUAL AND PROCEDURAL BACKGROUND.**

8          Mr. Young is the author of *The New York Times* bestseller *The Shack*, a

9   Christian novel which explores a father's coming to terms with the murder of his

10  daughter and his reawakened relationship with God.  Plaintiffs Brad Cummings and

11  Wayne Jacobsen reside in Ventura County and are the sole owners of Windblown.

12  FAC ¶ 2-3; ¶ 24 ("Windblown's principals, Jacobsen and Cummings").  "[I]n 2007,

13  Cummings and Jacobsen formed [Windblown], a small Christian publishing house,

14  for the purpose of publishing the Book and new works they intended to pursue."  <u>Id</u>.

15  ¶ 13.  Until May 2008, Windblown published and distributed the Book pursuant to

16  an oral agreement with Young.  <u>Id</u>. ¶ 14.

17         **A.     In the Publishing Contract Between Windblown and Young,**

18                 **Plaintiffs Admit Young is the Author and Copyright Owner of the**

19                 **Book.**

20         In May 2008, Plaintiffs (through Windblown) and Young memorialized their

21  oral publishing agreement in a written "Publishing Contract with Windblown

22  Media" (the "Publishing Contract").  FAC ¶ 24, Ex. A.  The Publishing Contract

23  unambiguously provides throughout that Young is the sole author of the Book.  <u>See</u>

24  <u>e.g.</u>, Ex. A at Recital ("William P. Young . . . (the 'Author')"); p.*11 (signature line:

25  "Author: William Paul Young").

26         In addition, the Publishing Contract provided that the copyright would be

27  registered ***solely*** in the name of William P. Young.  <u>Id</u>. at ¶ 10(a) (Windblown

28  "agrees to submit an application for registration of the copyright in the Work in the

1   name of the Author . . . William P. Young"; Windblown "shall include the following

2   copyright notice in each of its editions of the Work:  Copyright © [year] by William

3   P. Young").

4        The Publishing Contract also sets forth Young's share of revenues from the

5   distribution of the Book.  For example, it provides that for copies sold in the United

6   States, Young is to receive "a fixed rate of $0.50 (fifty cents) per book sold for

7   paperback books and $1.00 for hardback books, plus one-third of the net profits of

8   all activity generated by *The Shack* for Windblown Media."  Publishing Contract

9   ¶ 3(a).  Moreover, pursuant to the Publishing Contract, Young "specifically retains

10  the motion picture and theatrical rights and agrees to act in concern [sic] with

11  Windblown Media in the disposition of those rights.  Revenue generated by their

12  sale will be split 60% to Author [Young], 20% to Brad Cummings, and 20% to

13  Wayne Jacobsen."  Publishing Contract ¶ 5(b); see FAC ¶ 28(d).

14       **B.    In the Copyright Registration Filed by Plaintiff Brad Cummings**

15              **on Behalf of Windblown, Plaintiffs Admit Young is the Author and**

16              **Copyright Owner of the Book.**

17       Plaintiff Brad Cummings completed a Copyright Registration ("CR") listing

18  the "copyright claimant" and the "name of author" as "William P. Young."  FAC,

19  Ex. D at p.*3.  Cummings then signed the CR on behalf of Windblown and filed it

20  with the U.S. Copyright Office.  FAC ¶ 20 ("Cummings submitted a copyright

21  registration to the United States Copyright Office, Copyright No. TX0006578498,

22  which identified Young as the author of the Book.").  By signing the CR, Cummings

23  stated, "I certify that the statements made by me in this application are correct to the

24  best of my knowledge.*"  See FAC, Ex. D at p.*3.  The asterisk (*) in the previous

25  sentence is original; the certification statement is footnoted with the following

26  warning:  "17 U.S.C. § 506(e): Any person who knowingly makes a false

27  representation of a material fact in the application for copyright registration

28

1   provided for by section 409, or in any written statement filed in connection with the

2   application, shall be fined not more than $2,500."  Id; see also 17 U.S.C. § 506(e).

3       **C.    In the Letter of Understanding, Plaintiffs Admit Young is the**

4       **Author and Copyright Owner of the Book.**

5       Plaintiffs allege that "[a]t the same time Young, Jacobsen and Cummings

6   drafted and negotiated the Windblown-Young Agreement, they also entered into a

7   written Letter of Understanding, pursuant to which they agreed that the motion

8   picture rights to the Book would be assigned to a limited liability company to be

9   formed by Young, Jacobsen, Cummings and [non-party] Downes for the purpose of

10  producing a motion picture based on the Book."  FAC ¶ 25.  In the Letter of

11  Understanding, Plaintiffs Jacobsen and Cummings once again agree that Young is

12  the author of the Book.  FAC, Ex. B ("This letter is to memorialize our

13  understanding . . . with regards to the motion picture rights to the literary work

14  entitled THE SHACK . . . ***written by*** William P. Young." (emphasis added)).

15  Moreover, Plaintiffs recognize that because Mr. Young is the sole owner of the

16  copyright in the Book, only he could assign the rights to create a derivative work

17  based on the Book.  Compare FAC, Ex. A., ¶ 5(b) ("The Author specifically retains

18  the motion picture and theatrical rights and agrees to act in concern [sic] with

19  Windblown Media in the distribution of those right.") with FAC, Ex. B ("The

20  motion picture rights will be held by William P. Young until an LLC is formed by

21  the undersigned to produce the movie.").

22      **D.    In the Co-Venture Agreement with Hachette, Plaintiffs Admit**

23      **Young is the Author and Copyright Owner of the Book.**

24      The Book "became an instant hit," and "[a]s sales of the Book approached

25  one million copies, Windblown struggled to keep up with the demand."  FAC ¶ 23.

26  In response, Windblown entered into a partnership and joint venture agreement (the

27  "Co-Venture Agreement") with non-party Hachette Book Group, Inc. ("Hachette"),

28  whereby Windblown transferred all of its titles, including the Book, to Hachette for

1  distribution worldwide.  FAC ¶ 33; Co-Venture Agreement [FAC, Ex. C] ¶¶ 1(a),

2  1(c).  In the Co-Venture Agreement, signed by Plaintiff Brad Cummings on behalf

3  of Windblown, Plaintiffs, again, recognize Young as the sole author of the Book.

4  Co-Venture Agreement at p.*1 ("WHEREAS, WINDBLOWN has published an

5  important literary work entitled The Shack by William P. Young").  Thereafter, "the

6  Book made it to *The New York Times* bestseller list, where it has remained for

7  almost 100 consecutive weeks."  FAC ¶ 34.

8        **E.     Young Files the State Court Action**

9        In November 2009, Mr. Young filed a complaint against Windblown and

10  Hachette in California Superior Court, Ventura County, Case No. 56-2009-

11  00362329 (the "Young Complaint").  Request for Judicial Notice ("RJN") ¶ 1, Ex.

12  1; see also, Declaration of Michael T. Anderson ("Anderson Decl.") ¶ 2, Ex. 1.  In

13  the Young Complaint, Mr. Young alleged that Defendants had engaged in a variety

14  of improper accounting practices designed to reduce his per-book royalty and share

15  of net profits, including, but not limited to:  (i) excluding nearly 40% of all sales

16  from the calculation of Mr. Young's share of profits and per book royalty by

17  designating the sales "high discount sales;" (ii) paying themselves a 10%

18  distribution fee nowhere authorized by the Publishing Contract, (iii) refusing to pay

19  Mr. Young a share of profits earned by Hachette, (iv) deducting an inflated return

20  reserve of $4.2 million despite the work's low 1.2% return history, and (v)

21  deducting the per book royalty paid by Mr. Young before calculating net profits.

22  Young Complaint ¶¶ 16-20.  Mr. Young claimed that defendants' accounting

23  improprieties have deprived him of over $8 million through December 2008 alone.

24  Id. ¶ 2.

25        **F.     Defendants in the State Court Action Unsuccessfully Demur and**

26  **              Move to Strike Mr. Young's Complaint.**

27        Both Windblown and Hachette each filed a demurrer and motion to strike the

28  Young Complaint.  The Court, noting that "Publishers Windblown/Hachette,

melodramatically arguing on demurrer and MTS that the author's complaint seeking only compensatory damages and an accounting is 'a shocking display of greed, overreaching and ingratitude,'" analogized Defendants' accounting practices to "Hollywood bookkeeping," found that the Complaint "was very specifically pleaded," and denied all of the Defendants' Motions.  RJN ¶ 2, Ex. 2, Ruling; <u>see also</u> Anderson Decl. ¶ 3 Ex. 2.

### G.   Windblown Files Its Cross-Complaint in the State Court Action.

In March 2010, Defendant Windblown then filed its Cross-Complaint in the State Court Action against Mr. Young.  Windblown alleged that Mr. Young has breached its obligation to it by "failing to act in concert with Windblown in connection with the disposition of the motion picture rights to the Book," refusing "to assign the motion picture rights to the Book to The Shack Movie, LLC," and requested damages "in excess of Five Million Dollars."  RJN ¶ 3, Ex. 3, Cross-Compl. ¶¶ 37, 39; <u>see also</u>, Anderson Decl. ¶ 4, Ex. 3, ¶¶ 37, 39.

Defendants Windblown and Hachette have also served substantial discovery on Mr. Young, requiring him to respond to numerous interrogatories and to produce over 1,800 pages of documents, and noticed his deposition on several occasions. Mr. Young, in turn, is actively involved in document discovery now with Windblown and Hachette.  Anderson Decl. ¶ 5.

### H.   Plaintiffs File the Federal Court Action Containing the Same Allegations as Those in the Cross-Complaint

A month after filing the Cross-Complaint, Plaintiffs, on April 29, 2010, filed the Complaint in this Court, and, after Mr. Young filed a motion to dismiss the original complaint, Plaintiffs filed the FAC on or about June 23, 2010.[3]  The allegations in the Cross-Complaint and the FAC are virtually identical.  In the Cross-Compliant, as in the FAC, Windblown alleged that in December 2005, Young

---

[3] Plaintiffs served the FAC by mail.

sent Plaintiff Jacobsen a copy of an "Unpublished Manuscript" of what ultimately became the Book.  Cross-Compl. ¶¶ 8-13 and FAC ¶¶ 7-12.  According to Plaintiffs, a few months later, in March 2006, Plaintiffs and Young (along with non-party Bobby Downes) met at Jacobsen's home to discuss the Book.  Cross-Compl. ¶ 10 and FAC ¶ 9.  "At that meeting," Plaintiffs allege, "Jacobsen and Cummings agreed to collaborate with Young and work with him to rewrite the Unpublished Manuscript.  Jacobsen, Cummings, Young and Downes further agreed that once rewritten, the four of them would collaborate to produce a motion picture based on the rewritten manuscript."  Id.

Plaintiffs claim that Young and Plaintiffs "entered into a written Letter of Understanding, pursuant to which they agreed that Young would assign the motion picture rights to the Book to a limited liability company to be formed by Young, Jacobsen, Cumming and Downes for the purpose of producing a motion picture based on the Book."  FAC ¶ 25 (emphasis added).  Thereafter, according to Plaintiffs, the parties formed The Shack Movie, LLC pursuant to the Letter of Understanding for the propose of producing a motion picture based on the Book. FAC ¶ 27; *see also* Cross-Compl. ¶ 21(d).

According to Plaintiffs, in both the FAC and Cross-Complaint, Young breached the Letter of Understanding.  FAC ¶ 37 ("Young subsequently refused to execute a literary option and purchase agreement with The Shack Movie, LLC for the motion picture rights in the Book."); see Cross-Compl. ¶ 30 (same).[4]

---

[4] The Letter of Understanding, dated May 1, 2008, is in conflict with and, indeed, appears to have been superseded by the Publishing Contract, which is dated May 10, 2008.  For example, pursuant to the Letter of Understanding, "if the motion picture rights are sold prior to the LLC being formed . . . the receipts from that sale will be split evenly amongst the four – i.e., Young, Jacobsen, Cummings, and Downes. Letter of Understanding (emphasis added).  However, in the later-dated Publishing Contract, "[r]evenue generated by the[] sale [of the motion picture and theatrical rights] will be split 60% to Author, 20% to Brad Cummings, and 20% to Wayne

**III.   DISCUSSION**

    **A.**    **Because Plaintiffs Agreed Mr. Young is the Author of the Book,**
            **Plaintiffs' First Claim Fails to State a Claim as a Matter of Law.**

    In their first claim for relief, Plaintiffs claim the Book is a "joint work" and they are co-authors of the work (*i.e.*, the Book).  FAC ¶ 43.  Pursuant to Ninth Circuit authority, "several factors suggest themselves as among the criteria for joint authorship, ***in the absence of contract***."  Aalmuhammed v. Lee, 202 F. 3d 1227, 1234 (9th Cir. 2000) (emphasis added).  Among the several factors is whether "putative coauthors make objective manifestations of a shared intent to be coauthors, as by denoting the authorship of *The Pirates of Penzance* as 'Gilbert and Sullivan.'"  *Id.*  "The best objective manifestation of a shared intent, of course, ***is a contract saying that the parties intend to be or not to be co-authors***.  In the absence of a contract, the inquiry must of necessity focus on the facts."  *Id.* at 1235 (emphasis added).  *See also* Childress v. Taylor, 945 F.2d 500, 508 (2d Cir. 1991) ("In many instances, a useful test will be whether, in the absence of contractual agreements concerning listed authorship, each participant intended that all would be identified as co-authors.")  Where a contract exists, the inquiry ends – "[a] contract evidencing intent to be or no to be coauthors is dispositive."  Richlin v. Metro-Goldwyn Mayer Pictures, Inc., 531 F.3d 962, 969 (9th Cir. 2008); Aalmuhammed, 202 F.3d at 1235 ("The best objective manifestation of a shared intend, of course, is a contract saying that the parties intend to be or not to be co-authors.  In the absence of a contract, the inquiry must of necessity focus on the facts.").

    Here, the inquiry stops at the facts alleged in the FAC and incorporated by reference from the documents attached to the FAC.  American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir.1988) (allegations in a complaint are

---

Jacobsen."  Publishing Contract ¶ 5(b) (emphasis added).  There is no mention of Downes in the Publishing Contract.

10

considered judicial admissions); Fed. R. Civ. Proc. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). "[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." <u>Thompson v. Illinois Dep't of Professional Regulation</u>, 300 F.3d 750, 754 (7th Cir. 2002) (applying the "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegation" (<u>citing</u> <u>Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 449, 454 (7th Cir.1998); <u>Woods v. Asset Resources</u>, CV 06-398 SMS, 2006 WL 3782704, *2 (E.D.Cal. Dec. 21, 2006) ("When a written instrument or subject of judicial notice contradicts allegations in a complaint to which it is attached, the Court need not accept the allegations of the complaint as true") (<u>citing</u> <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir.1987)); <u>Saunders v. Knight</u>, CV 04-5924 REC LJO, 2006 WL 224426, *3 (E.D.Cal. Jan. 25, 2006) (<u>citing</u> <u>Thompson</u>); <u>Luna v. Kemira Specialty, Inc.</u>, 575 F.Supp.2d 1166, 1175-76 (C.D. Cal. 2008) (same).

While Plaintiffs allege that Mr. Young agreed that Plaintiffs were co-authors of the Book, ***the written instruments attached to the FAC contradict and therefore trump Plaintiffs' inconsistent allegations***. <u>Thompson</u>, 300 F.3d at 754 ("when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*.") (emphasis original)); <u>Saunders</u>, 2006 WL 224426 at p.*3 ("Where a plaintiff attaches documents and relies on their contents to form the basis of a claim, dismissal is appropriate if the document negates the claim.").

Indeed, <u>all</u> four exhibits attached to the FAC evidence Plaintiffs' agreement that Mr. Young is the sole author of the Book and the only copyright owner of the Book. First, in the Windblown-Young Agreement (FAC, Ex. A), Plaintiffs agreed Mr. Young is the sole author. <u>Id.</u> at Recital ("William P. Young, 1857 SW 35[th]

1  Street, Gresham Oregon 97080 (the "Author") (emphasis added); ¶ 10 ("The

2  Publisher agrees to submit an application for registration of the copyright in the

3  Work in the name of the Author"); p.*11 (signature line: "Author: William Paul

4  Young").

5      Second, in the Letter of Understanding (FAC, Ex. B), Plaintiffs agree that the

6  Book was "written by William P. Young." Id. ("This letter is to memorialize our

7  understanding . . . with regards to the motion picture rights to the literary work

8  entitled THE SHACK . . . written by William P. Young.").  In addition, as implied

9  in the document and admitted in the FAC, Plaintiffs recognize that only Mr. Young

10  has the rights as copyright owner of the Book to assign the rights to create a

11  derivative work – a motion picture based on the Book.  17 U.S.C. § 106(2) ("the

12  owner of copyright under this title has the exclusive rights to do and to authorize

13  any of the following: . . . to prepare derivative works based upon the copyrighted

14  work"); FAC ¶ 25.

15      Third, in Co-Venture Agreement (FAC, Ex. C), Plaintiffs agreed that Mr.

16  Young is the sole author of the Book. Id. at p.*1 ("WHEREAS, WINDBLOWN has

17  published an important literary work entitled The Shack by William P. Young").

18      Fourth, in the CR – completed, signed and filed by Plaintiff Cummings (FAC,

19  Ex. D) – Plaintiffs admit that Mr. Young is the sole author of the Book and the sole

20  owner of the Copyright. Id. at pp.*3-4; FAC ¶ 16 (Plaintiff "Cummings submitted a

21  copyright registration . . . which identified Young as the author of the book.").  By

22  signing the CR, Cummings "certified that the statements made by [him] in th[e]

23  application [were] correct to the best of [his] knowledge.*" See FAC, Ex. D at p.*3.

24  Moreover, on the copyright application, Cummings was reminded of the law:  "Any

25  person who knowingly makes a false representation of a material fact in the

26  application for copyright registration provided for by section 409, or in any written

27  statement filed in connection with the application, shall be fined not more than

28  $2,500." Id.; 17 U.S.C. § 506(e).

1    Under the Copyright Act, the CR "constitutes prima facie evidence of the

2  validity of the copyright *and of the facts stated in the certificate*."  17 U.S.C. §

3  410(c) (emphasis added); <u>Eisenman Chemical Co. v. NL Industries, Inc.</u>, 595

4  F.Supp. 141, 145 (D.C. Nev. 1984) (<u>citing</u> <u>Novelty Textile Mills, Inc. v. Joan</u>

5  <u>Fabrics Corp.</u>, 558 F.2d 1090, 1092 n. 1 (2nd Cir. 1977).  Here, the very person now

6  disputing "the facts stated in the certificate" – Plaintiff Cummings – is the same

7  person who provided them, and did so under the threat of criminal penalties.  Not

8  only are Plaintiffs' allegations not credible, they are inconsistent with documents

9  attached to their FAC.

10    Thus, the existence of the agreements alleged by Plaintiffs and the CR

11  completed, signed, and filed by Plaintiffs, ends the inquiry as to the authorship of

12  the Book.  In all of the documents attached to the FAC, Plaintiffs admit that Mr.

13  Young is the sole author of the Book and the only owner of the copyright in the

14  Book.  Plaintiffs' inconsistent allegations in the FAC are irrelevant; they are

15  trumped by the instruments attached to the FAC.  <u>Thompson</u>, 300 F.3d at 754.  In

16  light of the documents attached to the FAC, Plaintiffs cannot possibly establish that

17  Young intended to share ownership with Jacobsen and Cummings, a prerequisite to

18  co-authorship.  <u>See</u> <u>Aalmuhammed</u>, 202 F. 3d at 1236.  Therefore, because by their

19  own admissions Plaintiffs cannot state a claim for co-authorship of the Book, their

20  claim for a declaration for co-ownership in the copyright should be dismissed

21  pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

22    **B.    The Court Should Dismiss or Stay the Second State Law Claim**

23    **Because it is Duplicative of Issues Currently Pending in the State**

24    **Court Action**

25    Even if the Court does not dismiss the first claim for relief, the Court should

26  still dismiss or stay the second claim for relief for breach of contract pursuant to

27  well-established principles of abstention.

28

13

1
2

**1.    The Court Should Stay the Second Claim Pursuant to the
Younger Abstention Doctrine**

3    Younger abstention, originating from Younger v. Harris, 401 U.S. 37, 49-53

4  (1971), is a doctrine of equitable judicial restraint, not a jurisdictional limitation.

5  William W. Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial

6  § 2:1291.1a (The Rutter Group 2009).  The court's discretion to abstain from

7  hearing a claim under Younger "does not arise from lack of jurisdiction in the

8  District Court, but from strong policies counseling against the exercise of such

9  jurisdiction where particular kinds of state proceedings have already been

10  commenced."  Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v.

11  Nelson, 477 U.S. 619, 626 (1986).

12    Federal courts may abstain from hearing a claim where a state court

13  proceeding (1) is pending when the federal action is filed; (2) implicates important

14  state interests; and (3) provides adequate opportunity to raise the claims alleged.

15  Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431

16  (1982).  If these three Younger requirements are satisfied, federal court abstention is

17  required, absent extraordinary circumstances such as bad faith, harassment, or a

18  patently unconstitutional state statute.  Middlesex County Ethics Comm., 457 U.S.

19  at 435, 437; Younger, 401 U.S. at 53-54.  As to Plaintiffs' second claim for relief for

20  breach of contract, each of these elements are satisfied, justifying the Court's

21  exercise of abstention.

22    First, the State Court Action – Young v. Windblown Media, Inc., et al. – was

23  pending when Plaintiffs filed their federal action.  Young filed his complaint in the

24  State Court Action on November 19, 2009.  Plaintiffs, after losing their demurrer to

25  Young's complaint, filed their Cross-Complaint in the State Court Action on March

26  22, 2010.  Then, a month after filing their Cross-Complaint, Plaintiffs filed their

27  Complaint in the instance case.  The State Court Action is still pending.

28  Defendants have served extensive discovery requests to Mr. Young and third party

14

witnesses, Mr. Young has produced over 1,800 pages of documents in response, and Defendants have noticed the deposition of Mr. Young.

Second, the State Court Action implicates important state interests.  For purposes of <u>Younger</u> abstention, a wide variety of state interests qualify as "important."  <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v. Nelson</u>, 477 U.S. 619, 626 (1986); <u>Mission Oaks Mobile Home Park v. City of Hollister</u>, 989 F.2d 359, 361 (9th Cir. 1993).  For example, an important state interest includes the ability of state courts to adjudicate and enforce their orders. <u>See</u> <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 13-14 (1987) (Younger abstention proper based on important state interest in enforcing state court orders and judgments including orders forcing persons to transfer property).  Indeed, both this Circuit and the U.S. Supreme Court have held that the state's interest in administering cases brought before its courts is at the heart of the comity principle underlying <u>Younger</u> abstention:

> the Court distilled the comity principles that animate abstention – that the state's interest in administration of its judicial system is important, that federal court interference would be an offense to the state's interest, and that such interference would both unduly interfere with the legitimate activities of the state and readily be interpreted as reflecting negatively upon the state court's ability ….

<u>Gilbertson v. Albright</u>, 381 F.3d 965, 972 (9th Cir. 2004) (citing <u>Juidice v. Vail</u> 430 U.S. 327 (1977)); <u>see also</u> <u>Gilbertson</u>, 381 F.3d at 970 ("the Court observed that Congress over the years has manifested an intent to permit state courts to try state cases free of federal interference.").  Referencing <u>Middlesex</u> and <u>Dayton Christian Schools</u>, the Supreme Court noted that "judicial proceedings or disciplinary proceedings which are judicial in nature are the type of proceeding that does implicate an important state interest."  <u>Gilbertson</u>, 381 F.3d at 977 (<u>citing New</u>

1   Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 370 (1989);

2   Middlesex, 457 U.S. at 433-434; and Dayton Christian Schools, 477 U.S. at 627.

3        Third, the State Court Action provides an adequate opportunity for Plaintiffs

4   to raise their contract claims.  Indeed, as detailed above, Plaintiffs have already

5   raised the identical claims through the Cross-Complaint in the State Court Action.

6   Moreover, because the party in the State Court Action is Plaintiffs' publishing

7   company, Windblown Media, Plaintiffs could easily intervene personally, assuming

8   that would even be necessary given the fact that virtually identical issues are already

9   being litigated in the State Court Action.  See Delta Dental Plan of California v.

10  Mendoza, 139 F.3d 1289, 1297 (9th Cir. 1998) (ability to intervene in state court

11  action sufficient); Green v. City of Tucson, 255 F.3d 1086, 1102-03 (9th Cir.

12  2001).[5]

13              **2.        The Court Should Stay the Second Claim Pursuant to the**

14                          ***Colorado River* Doctrine**

15        In the interest of "wise judicial administration," federal courts may stay a case

16  involving a question of federal law where a concurrent state action is pending in

17  which the identical issues are raised.  William W. Schwarzer, et al., Cal. Practice

18  Guide: Fed. Civ. Pro. Before Trial § 2:687.1 (The Rutter Group 2009) (citing

19  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 815

20

21  _____

22  [5] The Court in Green criticized Mendoza in its applicability of the intervention rule
    (and the Green district court for applying Mendoza), because the Mendoza Court

23  would have had the plaintiffs intervene in a state court action to which he was a
    ***stranger***.  Green, 255 F.3d at 1102.  The court in Green clarified the rule:  "absent a

24  relationship with a party to a state proceeding . . . a federal plaintiff has no

25  obligation to intervene in state court litigation raising issues similar to those that the
    plaintiff wishes to raise in federal court."  Id. at 1102-03.  The instant case falls

26  squarely within the rule as clarified by Green.  The party in the State Court Action –

27  Windblown Media – is not only the Plaintiffs' publishing company, but as is
    apparent from the Complaint, it is also bound by the same agreements to which

28  Plaintiffs are bound.

1   (1976)).  The <u>Colorado River</u> doctrine "give[s] regard to conservation of judicial

2   resources."  <u>Colorado River</u>, 424 U.S. at 817.

3          The decision to abstain rests on a "careful balancing" of several factors as

4   they apply in a given case.  <u>Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.</u>,

5   460 U.S. 1, 16 (1983).  For example, in <u>Colorado River</u> the Court examined four

6   factors to determine whether staying proceedings was appropriate: (1) whether

7   either court has assumed jurisdiction over a res; (2) the relative convenience of the

8   forums; (3) the desirability of avoiding piecemeal litigation to prevent, for example,

9   conflicting results; and (4) the order in which the forums obtained jurisdiction.  <u>See</u>

10  424 U.S. at 818.  In <u>Moses Cone</u>, the Court articulated two more considerations;

11  (5) whether state or federal law controls; and (6) whether the state proceeding is

12  adequate to protect the parties' rights.  <u>See</u> 460 U.S. at 25-26, 103 S.Ct. at 941-42.

13  In addition, courts have recognized an additional factor:  (7) whether the state and

14  federal suits are substantially similar.  <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1416

15  (9th Cir. 1989).  Finally, in <u>Fireman's Fund Ins. Co. v. Quackenbush</u>, 87 F.3d 290

16  (9th Cir. 1996), the court recognized that (8) evidence of forum-shopping can justify

17  <u>Colorado River</u> abstention.  "These factors are to be applied in a pragmatic and

18  flexible way, as part of a balancing process rather than as a 'mechanical checklist.'"

19  <u>American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.</u>, 843 F.2d

20  1253, 1257 (9th Cir.1988) (<u>quoting Moses Cone</u>, 460 U.S. at 16).

21         In this case, the vast majority of factors weighs in favor of abstention.  First,

22  the state court forum obtained jurisdiction first, in November 2009, when Young

23  filed his complaint.  Plaintiffs (through Windblown) filed their cross-complaint in

24  March 2010.  A month later, in April 2010, Plaintiffs filed the Complaint in this

25  action.[6]

26

27  _____

28  [6] The existence of a res and the convenience of the forum are neutral or non-
    applicable factors.

1    Second, the state and federal cases are substantially similar.  Plaintiffs'

2 federal court complaint is virtually identical to their state court cross-complaint.

3 Indeed, in both the federal case and state case, for example, the Letter of

4 Understanding and Young's alleged obligation to assign the movie rights to the

5 Book to an LLC controlled by Young, Jacobsen, and Cummings, are in issue.

6    Third, there is a substantial risk of conflicting result if piecemeal litigation is

7 not avoided, the paramount concern of <u>Colorado River</u> abstention doctrine.  <u>See</u>

8 <u>Romine v. Compuserve Corporation</u>, 160 F.3d 337, 341 (6th Cir.1998) ("In *Moses*

9 *H. Cone*, the Supreme Court noted 'the consideration that was paramount in

10 *Colorado River* itself – the danger of piecemeal litigation.'  460 U.S. at 19") (federal

11 court security class action stayed pending resolution of parallel state class action).

12 The state court may find no alleged breach of any duty to transfer the motion picture

13 rights – the federal court may find the opposite.  The state court may find that the

14 May 10, 2008, Publishing Contract, which states only that the parties agree "to act

15 in concern [concert]" and the split of revenues is to be 60%/20%/20% to Young,

16 Cummings and Jacobsen applies – the federal court may find that the motion picture

17 rights are to be disposed of pursuant to the May 1, 2008 Letter of Understanding in

18 which the revenues are allegedly split four ways 25% each to Young, Cummings,

19 Jacobsen and Downes.  <u>Compare</u> FAC, Ex. A at ¶ 5(b) <u>with</u> Ex. B.  The same

20 witnesses, facts and chronology would have to be tried in both courtrooms, perhaps

21 at the same time.  Plaintiffs' procedural approach to the dispute regarding the

22 disposition of the motion picture rights invites disaster.  This Court should avoid it.

23    Fourth, there is evidence of forum shopping.  Plaintiffs Jacobsen and

24 Cummings are clearly trying to restart their litigation, and avoid adverse rulings

25 already made by the court in the State Court Action.

26    Fifth, the resolution of the claim involves the application of California

27 contract law, not federal law.  The May 10, 2008, Publishing Contract contains a

28 California choice of law clause.  FAC, Ex. A, ¶ 23.

1    Sixth, the State Court Action is adequate to protect Plaintiffs' rights.

2  Plaintiffs can intervene to assert any claim for breach in connection with the

3  disposition of the motion picture rights in state court.

4    Thus, in order to avoid the consequences of duplicative litigation proceeding

5  in both state court and federal court on similar claims at the same time, this Court

6  should stay the second claim for relief for breach of contract pursuant to the

7  Colorado River doctrine.

8  **IV.    CONCLUSION**

9    For all of the reasons discussed above, Plaintiffs' first claim for relief should

10  be dismiss for failure to state a claim.  Regardless of whether the Court dismisses

11  the first claim for relief, Plaintiffs' second for relief for breach of contract should be

12  dismissed, or, at the very least, stayed until the California Superior Court Action is

13  completed.

14

15  Dated:  July 9, 2010                    LOEB & LOEB LLP
                                            MICHAEL T. ANDERSON
16                                          DONALD A. MILLER

17
                                            By:   */s/ Michael T. Anderson*
18                                              Michael T. Anderson
                                                Attorneys for Defendant
19                                              William Paul Young

20

21

22

23

24

25

26

27

28