1 | **MARTIN D. SINGER (BAR NO. 78166)**
**ALLISON HART SIEVERS (BAR NO. 190409)**
2 | **HENRY L. SELF III (BAR NO. 223153)**
**LAVELY & SINGER**
3 | **PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
4 | Los Angeles, California 90067-2906
Telephone: (310) 556-3501
5 | Facsimile: (310) 556-3615
Email: mdsinger@lavelysinger.com
6 |         asievers@lavelysinger.com

7

8 | Attorneys for Plaintiffs WAYNE JACOBSEN
and BRAD CUMMINGS

9

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 | **WESTERN DIVISION**

13 | WAYNE JACOBSEN, an individual; )    CASE NO. CV10-3246 JFW (JCx)
BRAD CUMMINGS, an individual, )

14 |

15 |      Plaintiffs, )    **PLAINTIFFS' OPPOSITION TO**
   **DEFENDANT WILLIAM PAUL**
v. )    **YOUNG'S MOTION TO DISMISS**
16 |    **THE FIRST AMENDED**
WILLIAM PAUL YOUNG, an )    **COMPLAINT**
17 | individual; and DOES 1–10, )
inclusive, )

18 |

19 |      Defendants. )    **DATE:**    **August 9, 2010**
   **TIME:**    **1:30 a.m.**
   **ROOM:**    **16**

20

21

22 |        Plaintiffs Wayne Jacobsen ("Jacobsen") and Brad Cummings ("Cummings")

23 | (collectively "Plaintiffs") hereby submit their opposition to Defendant William Paul

24 | Young's ("Young") motion to dismiss Plaintiffs' first claim for declaratory relief

25 | and to dismiss or stay Plaintiffs' second claim for breach of contract in Plaintiffs'

26 | First Amended Complaint ("FAC").

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................... 1

II.     ARGUMENT ......................................................... 3

A.      Plaintiffs Have Alleged Facts Showing That An Actual and
        Justiciable Controversy Exists Between the Parties Regarding
        Their Rights and Duties Under U. S. Copyright Law. ................. 3

        1.      The Documents Attached to the FAC Are Consistent
                With Plaintiffs' Allegations. .................................. 4

        2.      The Attached Documents Do Not Constitute the Parties'
                Co-Authorship Agreement ................................... 6

        3.      The Copyright Registration Has No Prima Facie Effect .......... 7

        4.      Only a Federal District Court Can Resolve This
                Controversy .................................................. 9

B.      There is No Basis for the Court to Dismiss or Stay Plaintiffs'
        Second Claim for Breach of Contract. ............................. 11

        1.      Young Has Failed to Show that Extraordinary Circumstances
                Exist in This Case Warranting *Younger* Abstention. ............. 11

                a.      Plaintiffs Are Not Parties to the State Court Action........ 12

                b.      No Important State Interest is Implicated by this Case. .... 14

                c.      The State Court Action Does Not Provide Plaintiffs
                        with an Adequate Opportunity to Raise This Claim. ....... 15

                d.      This Action Would Not Have the Effect of Enjoining
                        the State Court Action. ................................. 18

        2.      The *Colorado River* Doctrine Does not Justify Stay or
                Dismissal of Plaintiffs' Breach of Contract Claim. ............. 19

III.    CONCLUSION ...................................................... 25

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

5

6

*American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*,
  843 F.2d 1253 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

7

8

*AmerisourceBergen Corp. v. Roden*,
  495 F.3d 1143 (9th Cir.2007) . . . . . . . . . . . . . . . . 11,12, 14, 18

9

10

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11

12

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 3

13

14

*Calderon v. Ashmus*,
  523 U.S. 740, 118 S.Ct. 1694 (1998) . . . . . . . . . . . . . . . . . . . . 4

15

16

*Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik GmbH*,
  510 F.3d 77 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17

18

*Childress v. Taylor*,
  945 F.2d 500 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19

20

*Colorado River Water Conservation Distr. v. United States*,
  424 U.S. 800, 96 S.Ct. 1236, 1244 (1976) . . . . . . . . . . . . 14, 19, 20

21

22

*De La Cruz v. Tormey*,
  582 F.2d 45 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23

24

*Durham Industries, Inc. v. Tomy Corp.*,
  630 F.2d 905 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25

26

*Effects Associates, Inc. v. Cohen*,
  817 F.2d 72 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27

28

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Express, LLC v. Fetish Group, Inc.*,
    424 F.Supp.2d 1211 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . 8

*Gaiman v. McFarlane*,
    360 F.3d 644 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 10

*Gilbertson v. Albright*,
    381 F.3d 965 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . 12, 15

*Great American Ins. Co. v. Gross*,
    468 F.3d 199, 208-209 (4th Cir.2006) . . . . . . . . . . . . . . . . . 19

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 10

*Harris v. Emus Records Corp.*,
    734 F.2d 1329 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 9

*Hearn v. R.J. Reynolds Tobacco Co.*,
    *279 F.Supp.2d 1096 (D. Ariz. 2003)* . . . . . . . . . . . . . . . . . . 6

*Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Janky v. Lake County Convention and Visitors Bureau*,
    576 F.3d 356 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 8

*Mason v. Jamie Music Pub. Co.*,
    658 F.Supp.2d 571 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . 8

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423, 102 S.Ct. 2515 (1982) . . . . . . . . . . . . . . . 11, 15

*Mission Oaks Mobile Home Park v. City of Hollister*,
    989 F.2d 359 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . 15

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1, 103 S.Ct. 927, 937 (1983) . . . . . . . . . . . . 20, 24, 25

*Murphy v. Uncle Ben's, Inc.*,
    168 F.3d 734 (5th Cir.1999) . . . . . . . . . . . . . . . . . . . . . 20

*NBC Subsidiary, Inc. v. Broadcast Information Services, Inc.*,
    717 F.Supp. 1449 (D. Colo. 1988) . . . . . . . . . . . . . . . . . . . . . 9

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350, 109 S.Ct. 2506, 2513 (1989) . . . . . . . . . . . . . . . . 11

*North Coast Industries v. Jason Maxwell, Inc.*,
    972 F.2d 1031 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 8

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v. Nelson*,
    477 U.S. 619, 106 S.Ct. 2718 (1986) . . . . . . . . . . . . . . . . . . 15

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706, 116 S.Ct. 1712, 1727 (1996) . . . . . . . . . . . . . 11, 19

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
    531 F.3d 962 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 7

*Romine v. Compuserve Corp.*,
    160 F.3d 337 (6th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . 22

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 9

*Sanchez-Martinez v. I.N.S.*,
    714 F.2d 72 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 6

*Seiler v. Lucasfilm, Ltd.*,
    808 F.2d 1316 (9th Cir. 1986), cert. denied, 484 U.S. 826 (1987) . . . 8

*State of Texas v. West Pub. Co.*,
    882 F.2d 171 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 6

*States and the National Government." Pennzoil v. Texaco, Inc.*,
    481 U.S. 1, 107 S.Ct. 1519 (1987) . . . . . . . . . . . . . . . . . 14, 15

*Sullivan v. Naturalis, Inc.*,
    5 F.3d 1410 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 10

*T.B. Harms Co. v. Eliscu*,
    339 F.2d 823, 828 (2d Cir. 1964) . . . . . . . . . . . . . . . . . . . . 10

*Thompson v. Illinois Dept. of Professional Regulation*,
    300 F.3d 750 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Travelers Indemn. Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Urantia Found. v. Maaherra*,
    114 F.3d 955 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATE CASES**

*Allen v. California Water & Tel. Co.*,
    31 Cal.2d 104, 187 P.2d 393 (1947) . . . . . . . . . . . . . . . . . . . . . 16

*City of Malibu v. California Coastal Comm'n*,
    128 Cal.App.4th 897, 27 Cal.Rptr.3d 501 (2005) . . . . . . . . . . . . . 17

*Lohnes v. Astron Computer Products*,
    94 Cal.App.4th 1150, 115 Cal.Rptr.2d 34 (2001) . . . . . . . . . . 16, 25

*Marriage of Kerr*,
    185 Cal.App.3d 130, 229 Cal.Rptr.610 (1986) . . . . . . . . . . . . . . . 17

*Truck Ins. Exchange v. Superior Court*,
    60 Cal.App.4th 342, 70 Cal.Rptr.2d 255 (1997) . . . . . . . . . . . . . . 17

**FEDERAL STATUTES**

17 U.S.C. § 101   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
17 U.S.C. § 408(d)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17 U.S.C. § 410(c)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
28 U.S.C. § 1338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10, 24
28 U.S.C. § 2201  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATE STATUTES**

California Code of Civil Procedure
§ 387(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 387(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 1250.230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

California Civil Code
§ 1781(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

California Corporations Code
§ 1800(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**FEDERAL RULES**

Federal Rules of Civil Procedure
§ 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**MISC.**

*Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 9:226 . . . . . . . . . . . . . . . 5
*Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 10:8 . . . . . . . . . . . . . . . 10
*Moore's Federal Practice* § 57.85[1] . . . . . . . . . . . . . . . . . . . . . . 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Jacobsen, Cummings and Young are the co-authors of the bestselling Christian novel entitled *The Shack* (hereinafter the "Book").  Although Young does not dispute that Jacobsen and Cummings co-authored the Book,[1] Young nevertheless believes that he should be credited as the sole author of the Book and that he alone should control the copyright.  By his motion to dismiss Plaintiffs' first claim for declaratory relief under the Copyright Act, Young is asking the Court to disregard the factual disputes between the parties concerning the authorship and copyright ownership of the Book and adjudicate that Young is the sole author of the Book and sole owner of the copyright.  This is inappropriate in the context of a Rule 12(b)(6) motion.

Young's principal argument in support of his motion to dismiss Plaintiffs' first claim for declaratory relief – that Plaintiffs and Young allegedly contractually agreed that Young would be the sole author of the Book – misstates the allegations in the FAC.  Plaintiffs and Young never agreed that Young would be the sole author or the sole owner of the copyright.  What Plaintiffs and Young agreed to was, among other things, the following: Young would be identified as the lead author on the cover of the Book and in the copyright registration, provided that (a) Young acknowledge Plaintiffs as co-authors and co-owners of the copyright, (b) Young would treat the Book as a "joint work" co-authored and co-owned by Plaintiffs and Young, (c) Jacobsen, Cummings and Young would each receive 1/3 of the profits generated from general sales of the Book (after deduction of certain royalties and expenses) and (d) Plaintiffs would have the right to develop a motion picture based

---

[1]     In fact, the title page of the Book states that it is "A novel by Wm. Paul Young In Collaboration with Wayne Jacobsen and Brad Cummings."  See Plaintiffs Request for Judicial Notice ("RJN"), Exh. "A."  In addition, in the Acknowledgments of the Book Young conceded: "[Jacobsen and Cummings] bore the lion's share of the work in the three major rewrites that brought this story to its final form. . . ." RJN, Exh. "B."

1  on the Book.  FAC, ¶ 20.

2      Young repudiated this agreement, refusing to acknowledge Plaintiffs' rights
3  as co-authors of the Book and co-owners of the copyright, and refusing to assign the
4  motion picture rights to the Book to an entity jointly owned and controlled by
5  Plaintiffs and Young as he was contractually obligated to do pursuant to a Letter of
6  Understanding between Plaintiffs and Young (FAC, Exh. "A"), thus preventing
7  Plaintiffs from developing a motion picture based on the Book.  As a result,
8  Plaintiffs filed an amended copyright registration, correcting the omission of their
9  names from the original copyright registration certificate, and filed this action
10  seeking a judicial declaration that the Book is a "joint work" co-authored by
11  Jacobsen, Cummings and Young.  The foregoing demonstrates that Plaintiffs have
12  alleged sufficient facts showing the existence of a justiciable controversy between
13  Plaintiffs and Young under copyright law.

14      Young cannot have his cake and eat it too; i.e., he cannot rely on an alleged
15  agreement to make him the sole author of the Book (though the parties in fact never
16  agreed that Young was the sole author) and simultaneously repudiate all of his
17  obligations to Plaintiffs under that same agreement.  Because, in ruling on Young's
18  motion to dismiss, the Court is compelled to accept the facts alleged in the First
19  Amended Complaint as true, Young's motion to dismiss Plaintiffs' first claim for
20  declaratory relief should be denied.

21      Young's motion to stay or dismiss Plaintiffs' second claim for breach of
22  contract based on the *Younger* and *Colorado River* abstention doctrines should also
23  be denied.  In a misguided effort to persuade the Court to stay or dismiss Plaintiffs'
24  second claim for breach of contract, Young has misrepresented the identity of the
25  parties and the claims in dispute in a lawsuit Young filed against Windblown Media,
26  Inc. ("Windblown") and Hachette Book Group, Inc. ("Hachette") in state court
27  (Young has defined this proceeding as the "State Court Action").  Young repeatedly
28  argues that Plaintiffs are allegedly already pursuing identical claims against Young

1  in the in the State Court Action, and on that basis, Young argues that the Court

2  should dismiss or stay Plaintiffs' breach of contract claim in this action.  To be

3  clear, Plaintiffs Jacobsen and Cummings are **not** parties to the State Court Action,

4  nor has any claim been asserted in the State Court Action by any party for breach

5  of the Letter of Understanding.[2]

6       Moreover, Young has utterly failed to establish the multiple requisites

7  necessary under both *Younger* and *Colorado River* for the Court to take the

8  extraordinary step of abstaining from adjudicating a controversy properly before the

9  Court.  Because Young has failed to establish each of the elements required to

10  justify abstention under both *Younger* and *Colorado River*, Young's motion to stay

11  or dismiss the second claim for breach of contract should be denied.

12  **II.  ARGUMENT**

13  **A.  Plaintiffs Have Alleged Facts Showing That An Actual and Justiciable**

14       **Controversy Exists Between the Parties Regarding Their Rights and**

15       **Duties Under U. S. Copyright Law.**

16       Misrepresenting the allegations in the First Amended Complaint, Young

17  argues that there is no justiciable controversy because Plaintiffs allegedly agreed that

18  he is the sole author of the Book.  Plaintiffs agreed to no such thing.  As plainly

19  alleged in the First Amended Complaint, all three parties "agreed that Jacobsen and

20  Cummings had co-authored and were joint owners of the copyright to the Book."

21  FAC ¶ 15; see also *id.* ¶ 18 ("Young acknowledged and agreed that Jacobsen and

22  Cummings had co-authored the Book and were co-owners of the copyright").

23  Young further suggests that the allegations in the First Amended Complaint should

24  be disregarded because they are allegedly contradicted by the exhibits to the First

25  Amended Complaint.  Young is mistaken for several reasons.

26       "Rule 12(b)(6) motions are viewed with disfavor."  *Broam v. Bogan*, 320

27

28     [2]   See Declaration of Allison Hart Sievers ("Sievers Decl."), ¶ 2 and Young's Request for Judicial Notice ("RJN"), Exhs. 1 and 3.

1   F.3d 1023, 1028 (9th Cir. 2003). A Rule 12(b)(6) motion is similar to the common

2   law general demurrer: *i.e.*, it tests the legal sufficiency of the claim or claims stated

3   in the complaint. The court must decide whether the facts alleged, if true, would

4   entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally

5   "no," the motion must be denied. *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.

6   1978). When considering such a motion, the district court must accept all facts

7   alleged in the complaint as true, and the pleading should not be dismissed "unless

8   it appears beyond doubt that the plaintiff can prove no set of facts in support of his

9   claim which would entitle him to relief." *Balistreri v. Pacifica Police Dept.*, 901

10  F.2d 696, 699 (9th Cir. 1990). Applying these deferential standards here,

11  Plaintiffs' first claim adequately alleges a cause of action for declaratory relief.

12         Under the federal Declaratory Judgment Act (28 U.S.C. sections 2201, *et*

13  *seq.*), a plaintiff states a valid claim for a declaratory judgment by asserting the

14  existence of (1) an actual controversy (2) regarding a matter within federal court

15  subject matter jurisdiction. *See Calderon v. Ashmus*, 523 U.S. 740, 118 S.Ct. 1694

16  (1998). Both elements are clearly fulfilled here. The First Amended Complaint

17  describes in extensive detail the ongoing controversy extant between themselves and

18  Young over their rights and duties with respect to the Book. FAC ¶¶ 42–45.

19  Resolution of this controversy turns exclusively on the interpretation and application

20  federal copyright law, over which district courts have original and exclusive subject

21  matter jurisdiction. 28 U.S.C. § 1338(a).

22         **2.     The Documents Attached to the FAC Are Consistent With**

23                  **Plaintiffs' Allegations.**

24         To begin with, the instruments attached to the pleading are consistent with

25  Plaintiffs' factual allegations. Although they accurately identify Young as an author

26  of the Book (which no one disputes that he is), the contracts do not explicitly state

27  that he is the *sole* author, nor is the authorship of the Book the subject of any of the

28  contracts attached to the First Amended Complaint

1    For example, the Windblown-Young Agreement, which is the publishing

2    agreement between Windblown and Young pursuant to which Windblown published

3    the Book, merely labels Young with the defined term "Author." FAC, Exh. A. In

4    fact, Young *is an* author, as are Jacobsen and Cummings. FAC ¶ 15. Moreover,

5    the Windblown-Young Agreement provides in multiple provisions that certain author

6    royalties are to be divided among Young, Jacobsen and Cummings with 60% to

7    Young, and 20% each to Jacobsen and Cummings. FAC, Exh. A, ¶¶ 3(a) and (b)

8    and 5(b). Similarly, for instance, the Letter of Understanding recites that the Book

9    was "written by William P. Young." FAC, Ex. B. Indeed, it was; nobody disputes

10   that. However, it was *also* written by Plaintiffs, *Young's co-authors*.

11   The Hachette-Windblown Agreement concurrently recognizes that

12   "WINDBLOWN has published an important literary work entitled The Shack by

13   William P. Young." FAC, Exh. C. This is completely consistent with Plaintiffs'

14   pleadings, which claim that the cover of the Book displays its title, *The Shack*, and

15   Young's name—in addition to a title page reflecting that Young wrote it "in

16   collaboration with" Plaintiffs. FAC ¶ 22; Plaintiffs' RJN, Exh. "A"

17   For a court to entirely dismiss a plaintiff's claims based on the contents of

18   documents outside of the pleadings whose interpretation is subject to dispute, it

19   would be necessary for the documents to completely *contradict* the plaintiffs' factual

20   allegations. *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750,

21   754 (7th Cir. 2002).[3] "This is a narrow exception. The contradiction must be

22   virtually inescapable . . . ." *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 9:226.

23   At best, Young has only arguably raised ambiguities evidenced by the

24   instruments, which would more appropriately be considered (if at all) in connection

25   with summary judgment. "At this stage of the litigation, however, the district court

26

27   [3] In *Thompson*, which Young repeatedly cites, the plaintiff pled himself
     out of court by attaching to his complaint a job description indicating that his
28   position was one of a policymaking official who could be terminated for political
     reasons.

1 must resolve any ambiguities in the considered documents in the plaintiff's favor."

2 *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Ariz. 2003)

3 (citing *Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72

4 (2d Cir. 1995). It would be procedurally inappropriate in the context of a Rule

5 12(b)(6) motion for the Court to evaluate the evidentiary weight (if any)

6 appropriately accorded to such documents because, at the pleading stage,

7 declaratory relief plaintiffs need only allege an actual controversy; they need not

8 also establish that they are entitled to a favorable judgment on the underlying merits.

9 *See State of Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989);

10 *Sanchez-Martinez v. I.N.S.*, 714 F.2d 72 (9th Cir. 1983).

11       **2.**    **The Attached Documents Do Not Constitute the Parties' Co-**

12               **Authorship Agreement**

13       A contract may indeed provide some evidence of parties' objective

14 manifestation of a shared intent to be or not to be co-authors. *Aalmuhammed v.*

15 *Lee*, 202 F.3d 1227, 1235 (9th Cir. 2000). Plaintiffs allege the formation of just

16 such an oral agreement here, pursuant to which the claim that Young acknowledged

17 and agreed that Plaintiffs had co-authored the Book and were co-owners of the

18 copyright in their joint work. FAC ¶¶ 15, 18.

19       None of the documents upon which Young's motion is based, by contrast,

20 constitutes a co-authorship agreement among the authors. The individual Plaintiffs

21 are not even parties to Exhibit A, which is instead a publishing agreement between

22 Young and Windblown. Exhibit B is a simply a Letter of Understanding regarding

23 the handling of motion picture rights, and Exhibit C is a Publishing Co-Venture

24 agreement between Hachette and Windblown—not Young or Plaintiffs.

25       Furthermore, even if one of these items were *arguendo* a co-authorship

26 agreement, the inquiry would still not necessarily begin and end solely with such

27 written contract, as Young contends. The Copyright Act defines a joint work as "a

28 work prepared by two or more authors with the intention that their contributions be

1  merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. §
2  101.  Whether the parties intended their contributions to be merged into a whole is
3  typically evaluated by examining the entirety of the circumstances.  *Thomson v.*
4  *Larson*, 147 F.3d 195, 201–02 (2d Cir. 1998) ("the test of co-authorship intent will
5  vary depending on the specific factual circumstances").   The best objective
6  manifestation of a shared intent, of course, is a contract saying that the parties
7  intend to be or not to be co-authors.  *Aalmuhammed*, 202 F.3d at 1235.

8          But courts additionally look beyond contracts to other evidence that may also
9  bear on the parties' state of mind and intent.  *See, e.g., Childress v. Taylor*, 945
10 F.2d 500, 503 (2d Cir. 1991) (finding plaintiff sole author despite written
11 confirmation that "The finished play shall be equally owned and be the property of
12 both" parties).  For example, even in the case upon which Young principally relies,
13 the Ninth Circuit agreed with the district court that the parties' agreement was
14 contractual evidence of an objective manifestation that the parties did *not* intend to
15 be coauthors, but the courts nonetheless still went on to consider other documents
16 "and the surrounding circumstances" before reaching a definitive conclusion.
17 *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 969 (9th Cir.
18 2008).[4]

19         **3.    The Copyright Registration Has No Prima Facie Effect**

20         Young's attempted reliance on the original copyright registration of the Book
21 is misplaced.  *See* FAC, Exh. D.   Although a certificate of a registration may
22 constitute prima facie evidence of the facts stated therein, such evidentiary
23 presumption is easily rebutted.  17 U.S.C. § 410(c).  "It is clear, however, that a
24 certificate of registration creates no irrebuttable presumption . . . .   Where other
25 evidence in the record casts doubt on the question, validity will not be assumed."

26 _____

27         [4]      It is also important to note that *Richlin*, like *Aalmuhammed* and the
   other cases Young cites, was decided on summary judgment, when it is
   appropriate for the court to making findings of fact about such matters, not on a
28 Rule 12(b)(6) motion, which should instead be generally limited to the legal
   sufficiency of the pleadings.

1  *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980); *see also*

2  *North Coast Industries v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992)

3  (presumption may be rebutted); *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th

4  Cir. 1986), *cert. denied*, 484 U.S. 826 (1987).  To rebut the presumption, a party

5  must simply offer some evidence or proof to dispute or deny the facts stated in the

6  certificate.  *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,

7  122 F.3d 1211, 1217 (9th Cir. 1997).

8      For example, in a recent federal declaratory relief action, a New York district

9  court found last year that copyright registration certificates did not constitute prima

10  facie evidence of the defendants' copyright ownership of a musical composition

11  actually authored by the plaintiff.  *Mason v. Jamie Music Pub. Co.*, 658 F.Supp.2d

12  571, 584 (S.D.N.Y. 2009).

13      Similarly, for instance, in another decision from 2009, a plaintiff who had

14  listed herself as the sole author of music and lyrics in a musical composition brought

15  an infringement action against the defendant, which had obtained a license to use the

16  song from another individual who claimed to be a co-author of the work with the

17  plaintiff.  *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356 (7th

18  Cir. 2009).  Disregarding the facts stated in the registration, the appellate court

19  examined the record to evaluate whether, as a factual matter, the two qualified as

20  co-authors under the Copyright Act (which they did).  *Id.* at 362–63.

21      United States courts have consistently demonstrated a liberal lenience with

22  respect to misstatements and errors that may be contained in copyright registration

23  applications and, consequently, certificates.  Melville B. Nimmer & David Nimmer,

24  *Nimmer on Copyright* § 7.20[B][1] at 7-210 (collecting numerous cases); *see*, *e.g.*,

25  *Express, LLC v. Fetish Group, Inc.*, 424 F.Supp.2d 1211, 217, 1222 (C.D. Cal.

26  2006).

27      "The case law is overwhelming that inadvertent mistakes on registration

28  certificates do not invalidate a copyright and thus do not bar infringement actions,

1  unless the alleged infringer has relied to its detriment on the mistake, or the claimant

2  intended to defraud the Copyright Office by making the misstatement."[5] *Urantia*

3  *Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir.1997); *see also Harris v. Emus*

4  *Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). Otherwise, "failure to inform

5  the Copyright Office of given facts is without substance, to the extent that the Office

6  would have registered the subject work even had it known those facts." Nimmer,

7  *supra*, at 7-211.

8      If information in a copyright registration is incorrect or incomplete, the

9  Copyright Act specifically provides "for the filing of an application for

10  supplementary registration, to correct an error in a copyright registration or to

11  amplify the information given in a registration."    17 U.S.C. § 408(d).

12  "Consequently, the prima facie effect of the registration . . . will be neutralized

13  because it will contain conflicting statements of facts." *NBC Subsidiary, Inc. v.*

14  *Broadcast Information Services, Inc.*, 717 F.Supp. 1449, 1451 (D. Colo. 1988).

15      That is exactly what happened here. Because Plaintiffs' names were omitted

16  from the copyright registration of the Book as a result of Young's agreement to

17  various terms and conditions, and Young has now repudiated that agreement,

18  Plaintiffs filed a supplementary registration with the United States Copyright Office

19  identifying themselves as co-authors of the Book. FAC ¶ 41. In doing so, Plaintiffs

20  effectively neutralized any evidentiary presumption or effect of the original

21  registration.

22      **4.    <u>Only a Federal District Court Can Resolve This Controversy</u>**

23      As mentioned *supra*, district courts have original and exclusive subject matter

24  jurisdiction over any civil action arising under the Copyright Act.  28 U.S.C. §

25  1338(a).  The scope of this jurisdiction is broader than just copyright infringement

26

27      ────────────

[5] The omission of an author's name from an application (even if
intentional) typically is not considered fraudulent, especially where the

28  registration is subsequently amended with the correct name.  *See*, *e.g.*, *S.O.S.,
Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).

1   claims; it extends to encompass all cases in which "the complaint is for a remedy

2   expressly granted by the Act, . . . or asserts a claim requiring construction of the

3   Act . . . ." *Effects Associates, Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987)

4   (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964)); *see also*,

5   *e.g.*, *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik GmbH*, 510

6   F.3d 77, 81 (1st Cir. 2007) ("The federal courts clearly have jurisdiction over this

7   case. . . . Plaintiff's ownership of any interest, as we have said, is hotly disputed,

8   and is an issue governed by the Copyright Act."); *Sullivan v. Naturalis, Inc.*, 5 F.3d

9   1410, 1412–13 (11th Cir. 1993).

10          Plaintiffs' FAC presents far more than just a run-of-the-mill state law case for

11   breach of contact.  It also primarily seeks an adjudication and judicial declaration

12   of the parties' legal rights and duties under Copyright Act, *viz.*, whether the Book

13   is a "joint work" within the meaning of Section 101 of which Jacobsen, Cummings

14   and Young are all authors.   FAC ¶ 44; *Gaiman v. McFarlane*, 360 F.3d 644,

15   652–53 (7th Cir. 2004) ("Gaiman seeks a declaration that he is a co-owner . . .

16   That question, on the answer to which his entitlement to an accounting and other

17   relief depends, cannot be answered without reference to the Copyright Act, and it

18   therefore arises under the Act.").   Federal declaratory relief is frequently and

19   appropriately used in this manner to resolve intellectual property disputes.  *Moore's*

20   *Federal Practice* § 57.85[1]; *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 10:8;

21   *see, e.g.*, *Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996).

22          If this Court did not entertain Plaintiffs' declaratory relief action, then the

23   parties would be left without any legitimate forum in which to resolve their dispute

24   because federal jurisdiction over copyright cases is exclusive. 28 U.S.C. § 1338(a).

25   It would therefore constitute reversible error to dismiss Plaintiffs' first claim for

26   declaratory relief.  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896

27   F.2d 1542,1555–56 (9th Cir. 1990).

28

**B.** **There is No Basis for the Court to Dismiss or Stay Plaintiffs' Second Claim for Breach of Contract.**

    **1.** **Young Has Failed to Show that Extraordinary Circumstances Exist in This Case Warranting *Younger* Abstention.**

Unless "vital state interests" are at stake, federal courts have an "unflagging obligation" to exercise their jurisdiction. Abstention is "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728, 116 S.Ct. 1712, 1727 (1996); see also *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513 (1989) (circumstances in which abstention is proper are "carefully defined" and "remain the exception, not the rule."). No circumstances exist in this case which would warrant this Court's abstention from exercising jurisdiction over Plaintiffs' breach of contract claim.

Young has misstated the standard for the application of *Younger* abstention. Young contends that in order for the Court to abstain from hearing Plaintiffs' breach of contract claim, he need only establish the pendency of a state court proceeding at the time the federal action was filed, that the pending state court proceeding implicates important state interests, and the state court proceeding provides an adequate opportunity to raise the claim asserted by Plaintiffs herein. Motion, 14:12-16, citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-434, 102 S.Ct. 2515 (1982). There is also a fourth and indispensable element that Young must also establish: if each of the foregoing elements is satisfied, the court may only abstain from exercising jurisdiction if the federal court action would enjoin, or would have the practical effect of enjoining the state court proceeding. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir.2007). As the Ninth Circuit has explained:

        *If* a state-initiated proceeding is ongoing, and *if* it implicates important state interests . . ., and *if* the federal

1   litigant is not barred from litigating federal constitutional

2   issues in that proceeding, *then* a federal court action that

3   would enjoin the proceeding, or have the practical effect

4   of doing so, would interfere in a way that *Younger*

5   disapproves.

6   *Gilbertson v. Albright*, 381 F.3d 965, 979 (9th Cir.2004) (emphasis in original).

7        Unless all of the foregoing four elements are strictly met, abstention must be

8   denied. *AmerisourceBergen Corp.* at 1148.   Young has failed to establish the

9   existence of all four of these elements.  Therefore, the Court should deny Young's

10  motion to dismiss or stay Plaintiffs' breach of contract claim on grounds of the

11  *Younger* abstention doctrine.

12       **a.**    <u>**Plaintiffs Are Not Parties to the State Court Action**</u>**.**

13       Throughout his Motion, Young misrepresents the identity of the parties and

14  claims asserted in the State Court Action.   Young refers to Plaintiffs allegedly

15  having  lost a demurrer to Young's complaint in the State Court Action, and he

16  states that Plaintiffs have allegedly asserted a claim identical to the claim for breach

17  of the Letter of Understanding in the State Court Action.   Young has completely

18  misrepresented the pleadings in the State Court Action. ***Plaintiffs are not parties***

19  ***to the State Court Action****. See*, Sievers Decl., ¶ 2; Young's RJN, Exh. 1, ¶¶ 3-5

20  and Exh. 3,  ¶¶ 1-4.  Nor has any claim for breach of the Letter of Understanding

21  been asserted in the State Court Action.  Sievers Decl., ¶ 2.

22       Young's complaint in the State Court Action asserts causes of action against

23  Windblown and Hachette  for breach of contract, accounting and declaratory relief.

24  The gist of Young's claim is that Windblown and Hachette have allegedly breached

25  the Windblown-Young Agreement by not properly accounting to Young with respect

26  to the proceeds from the sale of the Book, and Young is seeking to terminate the

27  Windblown-Young Agreement.  Young's RJN, Exh. 1.

28       In its Cross-Complaint, Windblown asserted a cause of action against Young

1  for breach of contract.  Specifically, Windblown contends that Young breached the

2  Windblown-Young Agreement by preventing Windblown from exploiting derivative

3  and ancillary products in connection with the Book, and by secretly negotiating with

4  third parties to dispose of the motion picture rights to the Book in breach of Young's

5  contractual obligation to act in concert with Windblown in connection with the

6  disposition of those rights.  Young's RJN, Exh. 3, ¶ 37.  In addition, Windblown has

7  asserted causes of action against Yoder and Ambassador for breach of fiduciary

8  duty, and against Young, Yoder and Ambassador for intentional interference with

9  contractual relations, arising from Young's, Yoder's and Ambassador's interference

10  with Windblown's contractual relations with Hachette.   Young's RJN, Exh. 3, ¶¶

11  40-52.

12      In contrast, in this case, Jacobsen and Cummings, individually, have asserted

13  a claim for declaratory relief regarding the authorship and copyright ownership of

14  the Book (FAC, ¶¶ 42-45), as well as a breach of contract claim against Young

15  arising from Young's refusal to assign the motion picture rights to the Book to The

16  Shack Movie, LLC, pursuant to the Letter of Understanding between Jacobsen,

17  Cummings and Young (FAC, ¶¶ 46-49).  The breach of contract claim in this action

18  involves different parties and a completely separate agreement from the contract at

19  issue in the State Court Action.

20      Although Young filed a lawsuit in state court asserting causes of action against

21  Windblown and Hachette based Young's allegations that Windblown and Hachette

22  have engaged in improper accounting practices, and Windblown has asserted causes

23  of action against Young in the state court arising from Young's breach of the

24  Windblown-Young Agreement, because Jacobsen and Cummings are not parties to

25  the State Court Action and no claims for breach of the Letter of Understanding have

26  been asserted in the State Court Action, Young has failed to satisfy the first requisite

27  for *Younger* abstention.

28  / / /

**b.     No Important State Interest is Implicated by this Case.**

The second threshold requirement of the *Younger* abstention doctrine is only satisfied when "the State's interests in the [ongoing] proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519 (1987).  The garden variety breach of contract claims asserted by the parties in the State Court Action simply do not implicate any vital state interests that would justify the application of *Younger* abstention in this case.

Based on *Pennzoil*, Young argues that if the Court were to entertain Plaintiffs' second claim for breach of contract, it would somehow interfere with State of California's courts' ability to enforce their orders and judgments.  That argument is complete nonsense.  Whatever the outcome of Plaintiffs' claim for breach of the Letter of Understanding in this action, it will have no effect on the state court's ability to enforce its orders and judgments in the State Court Action. In the event Plaintiffs prevail on their claim against Young for breach of the Letter of Understanding in this action, it is entirely possible that Windblown might not prevail on its cause of action against Young for breach of the Windblown-Young Agreement in the State Court Action (or vice versa).  In other words, nothing that might occur in this action will interfere with the state court's ability to adjudicate the parties' claims in the State Court Action.  Even if there were a potential for conflicting outcomes between this action and the State Court Action, it would not warrant the Court's stay or dismissal of this action. *AmerisourceBergen*, 495 F.3d at 1151.

Based on Young's logic, *Younger* abstention would apply every time a case is filed in federal court involving issues of state law that may be resolved in a state court proceeding.  This is not the law.  "The pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1244 (1976).  Therefore, the fact Young has filed a

1   lawsuit in state court against Windblown and Hachette (neither of whom are parties

2   to this action) in no way bars Jacobsen and Cummings from pursuing claims against

3   Young in this Court that may involve issues of state law.

4          Based on the foregoing, it is no surprise that Young failed to cite a single case

5   in which a court has found that a contractual dispute between private parties

6   implicated an important state interest. Indeed, it is clear from the cases cited in

7   Young's moving papers that courts applying *Younger* abstention typically consider

8   matters considered vital to the operation of state government to be "important" state

9   interests under *Younger*. See, *Middlesex County Ethics Comm.*, 457 U.S. at 433

10  (state's interest in disciplining attorneys admitted to the state bar is an important

11  state interest); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc. v.*

12  *Nelson*, 477 U.S. 619, 628, 106 S.Ct. 2718 (1986) (state's interest in eliminating

13  sex discrimination justified abstention from a civil rights action against the Ohio

14  Civil Rights Commission); *Mission Oaks Mobile Home Park v. City of Hollister*,

15  989 F.2d 359 (9th Cir.1993) (state's substantial interest in considering the

16  constitutionality of its own rent control ordinances); *Pennzoil*, 481 U.S. at 13-14

17  (state's interesting in resolving constitutional challenges to its own statutes and

18  procedural rules); *Gilbertson*, 381 F.3d at 983 (state's interest in enforcing licensing

19  requirements for land surveyors).

20         Because the contractual dispute between Young, Windblown and Hachette

21  regarding the Windblown-Young Agreement does not implicate any important state

22  interest, Young has failed to satisfy the second threshold requirement for application

23  of *Younger* abstention.

24      c.   **The State Court Action Does Not Provide Plaintiffs with an**

25           **Adequate Opportunity to Raise This Claim.**

26         Plaintiffs may not have the ability to assert their claim for breach of the Letter

27  of Understanding in the State Court Action. As previously discussed, Plaintiffs

28  Jacobsen and Cummings are not parties to the State Court Action. Because

OPP TO MX TO DISMISS 071910.wpd                        15

Jacobsen and Cummings are not parties to the State Court Action, they have no standing to assert claims against Young in that action. *Lohnes v. Astron Computer Products*, 94 Cal.App.4th 1150, 1153, 115 Cal.Rptr.2d 34 (2001).

Without citing any authority, Young glibly asserts that Plaintiffs "could easily intervene personally" in the State Court Action. However, under California law, Plaintiffs cannot intervene in the State Court Action as a matter of right. California Courts are only required to permit a non-party to intervene in a lawsuit where the party has a statutory right to intervene, or the party is claiming an interest in the property or transaction that is the subject of the lawsuit. Cal. Code Civ. Proc. § 387(b). Here, there is no statute giving Plaintiffs an unconditional right to intervene in the State Court Action.[6] Nor is there any property or transaction at issue in the State Court Action in which Jacobsen and Cummings personally are claiming an interest.

Jacobsen's and Cummings' ability to intervene in the State Court Action to assert their individual claims against Young for breach of contract is entirely within the discretion of the state court, and there is a strong possibility that the state court would exercise its discretion to deny an application by Jacobsen and Cummings to intervene in that proceeding. Cal. Civ. Proc. § 387(a). In considering whether to grant a petition by Jacobsen and Cummings to intervene in the State Court Action, the court would consider first and foremost whether such petition is timely. *Allen v. California Water & Tel. Co.*, 31 Cal.2d 104, 108, 187 P.2d 393 (1947) ("it is a general rule that a right to intervene should be asserted within a reasonable time and that the intervenor must not be guilty of an unreasonable delay after knowledge of

---

[6] Examples of statutes giving non-parties to intervene in certain actions include the following: California Civil Code section 1781(e)(3) (in class action under Consumer Legal Remedies Act, any member of the consumer class may appear in the action); California Corporations Code section 1800(c) (a shareholder or creditor of a corporation may intervene in involuntary dissolution proceedings); and California Code of Civil Procedure section 1250.230 (any party having a legal or equitable interest in property that is subject to a pending condemnation proceeding may intervene).

1 the suit."). Since the State Court Action was filed nine months ago – in November

2 2009 – there is a possibility that the state court may deny the petition to intervene

3 on grounds that Jacobsen and Cummings have unreasonably delayed in seeking to

4 intervene in the State Court Action.

5 　　In addition, the state court would only be able to permit intervention if

6 Jacobsen and Cummings can show that they have a direct and immediate interest in

7 the litigation, the intervention would not enlarge the issues in the case and the

8 reasons for intervention outweigh any opposition from the other parties in the case.

9 *Truck Ins. Exchange v. Superior Court*, 60 Cal.App.4th 342, 346, 70 Cal.Rptr.2d

10 255 (1997). Here, although Jacobsen and Cummings are the principals of

11 Windblown, the state court may find that they have no direct and immediate interest

12 in the litigation since Jacobsen and Cummings are not parties to the agreements in

13 dispute in the State Court Action. Indeed, even where a direct interest is shown, the

14 court still has discretion to deny intervention. *Marriage of Kerr*, 185 Cal.App.3d

15 130, 134, 229 Cal.Rptr.610 (1986); *City of Malibu v. California Coastal Comm'n*,

16 128 Cal.App.4th 897, 906, 27 Cal.Rptr.3d 501 (2005).

17 　　Moreover, the intervention of Jacobsen and Cummings in the State Court

18 Action to pursue their claim against Young for breach of the Letter of

19 Understanding would enlarge the issues to be decided in the case. Young's repeated

20 assertion that Plaintiffs' breach of contract claim is identical to issues already being

21 litigated in the State Court Action is false. In this action, Jacobsen and Cummings

22 individually have asserted a claim against Young for breach of contract based on

23 Young's refusal to assign the motion picture rights to The Shack Movie, LLC

24 pursuant to the Letter of Understanding executed by Young, Jacobsen and

25 Cummings.

26 　　In the State Court Action, Windblown's breach of contract claim against

27 Young is based on actions by Young which have prevented Windblown from

28 exploiting derivative and ancillary products relating to the Book in breach of the

Windblown-Young Agreement, as well as Young's breach of a provision of the Windblown-Young Agreement which required him to act in concert with Windblown with respect to the disposition of the motion picture rights to the Book. Thus, the breach of contract claim asserted Plaintiffs in this action involves entirely different parties to an entirely different agreement imposing different obligations on Young than those at issue in the State Court Action.

In short, because the state court would have wide discretion to deny any petition by Jacobsen and Cummings to intervene in the State Court Action, this Court cannot conclude with any certainty whether Jacobsen and Cummings would be permitted to intervene in the State Court Action. Therefore, in ruling on Young's motion to stay or dismiss Plaintiffs' breach of contract claim, the Court cannot find that the State Court Action would provide Plaintiffs with an adequate opportunity to raise their breach of contract claim against Young.

**d.      This Action Would Not Have the Effect of Enjoining the State Court Action.**

In order for the Court to find that *Younger* abstention is warranted in this case, in addition to the three elements discussed above, the Court must find that "the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it." *AmerisourceBergen*, 495 F.3d at 1151. Young has made no showing whatsoever that, if the Court entertains Plaintiffs' claim against Young for breach of the Letter of Understanding, it would in any way prevent the state court from adjudicating any of the claims asserted in the State Court Action.

No judgment that may be awarded by the Court in this action will in any way affect or prevent the state court from adjudicating the claims before it. Whether this Court finds that Young breached the Letter of Understanding by refusing to assign the motion picture rights for the Book to The Shack Movie, LLC will have no impact on the state court's ability to adjudicate Young's claims that Windblown and

Hachette failed to properly account to him under the Windblown-Young Agreement, or Windblown's claims that Young breached the Windblown-Young Agreement by preventing Windblown from exploiting the ancillary and derivative rights to the Book and by failing to act in concert with Windblown regarding the disposition of the motion picture rights to the Book.

Because Young has failed to establish that the relief sought by Plaintiffs in this action would enjoin, or have the practical effect of enjoining the state court from adjudicating the issues before it, Young's motion to stay or dismiss Plaintiffs' breach of contract claim based on *Younger* must be denied.

2.     **The *Colorado River* Doctrine Does not Justify Stay or Dismissal of Plaintiffs' Breach of Contract Claim.**

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them.   Therefore, Colorado River abstention is appropriate only under "exceptional circumstances."   *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244 (1976); *Quackenbush*, 517 U.S. at 716.  No such exceptional circumstances exist in this case.

The threshold question for the Court to determine when deciding whether *Colorado River* abstention is appropriate is whether there are parallel state and federal court proceedings.   *Great American Ins. Co. v. Gross*, 468 F.3d 199, 208-209 (4th Cir.2006).  Where the parties and claims asserted in the state and federal court actions are not identical, abstention is inappropriate.  Id.  Young has failed to satisfy this basic threshold requirement for *Colorado River* abstention.

Neither the parties nor the claims asserted in this action and the State Court Action are identical.  In the State Court Action, the parties are Young, Windblown, Hachette, Yoder and Ambassador.  Jacobsen and Cummings are ***not*** parties to the State Court Action.  Sievers Decl., ¶ 2; Young's RJN, Exhs. 1 and 3.  The State Court Action involves claims for breach of the Windblown-Young Agreement,

1  accounting, breach of fiduciary duty by Windblown against Yoder and Ambassador
2  and a claim by Windblown against Young, Yoder and Ambassador for interference
3  with contractual relations. Young's RJN, Exhs. 1 and 3. In contrast in this action,
4  Jacobsen and Cummings have asserted claims against Young for declaratory relief
5  in relation to the authorship and copyright ownership of the Book, and breach of the
6  Letter of Understanding. Thus, a comparison of the parties and claims asserted in
7  the State Court Action versus those in this case easily establishes that the State Court
8  Action is not a parallel proceeding. Even assuming the State Court Action and this
9  action could be considered parallel proceedings, the balance of the factors to be
10 considered by the Court weighs heavily in favor of the Court continuing to exercise
11 jurisdiction over Plaintiffs' breach of contract claim.

12     The Court in *Colorado River* identified the following factors as relevant in
13 determining whether the federal court should stay its proceedings: (a) whether either
14 court has taken control of a res or property that is the subject of the litigation; (b)
15 whether the state and federal court proceedings are substantially similar; (c) the
16 inconvenience of the federal forum; (d) the avoidance of piecemeal litigation; (e) the
17 priority of the proceedings; (f) controlling law; and (g) the adequacy of the state
18 proceeding. *Colorado River*, 424 U.S. at 818. In addition, in considering whether
19 to abstain from exercising jurisdiction, the Court is required to carefully balance
20 each of the foregoing factors, "with the balance heavily weighted in favor of
21 exercising jurisdiction." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460
22 U.S. 1, 16, 103 S.Ct. 927, 937 (1983).

23     Young has made no showing whatsoever regarding the first factor, the
24 exercise of jurisdiction over a res or other property. Indeed, there is no res over
25 which either the state court or this Court has taken jurisdiction. The absence of this
26 factor weighs against abstention. *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738
27 (5th Cir.1999).

28     The second factor, substantial similarity, also weighs against abstention. It

1  is clear that the parties in the State Court Action and the parties in this action are not
2  identical.  Young's statement that his obligation to assign the motion picture rights
3  to the Book to The Shack Movie, LLC is an issue to be decided in the State Court
4  Action is false.  The Letter of Understanding is not the subject of any cause of
5  action in the State Court Action.

6  In Windblown's Cross-Complaint, Windblown's cause of action for breach
7  of contract arises from Young's breach of his publishing agreement with
8  Windblown.  Windblown alleges that Young breached the Windblown-Young
9  Agreement by preventing Windblown from exploiting derivative and ancillary
10  products based on the Book and by failing to act in concert with Windblown with
11  respect to the disposition of the motion picture rights to the Book.  Young's RJN,
12  Exh. 3, ¶ 37.  Nowhere in Windblown's Cross-Complaint against Young does
13  Windblown seek any adjudication with respect to the parties' rights and duties under
14  the Letter of Understanding (indeed, Windblown is not a party to the Letter of
15  Understanding so it would have no standing to do so), or whether Young was
16  contractually obligated to assign those rights to The Shack Movie, LLC.  Therefore,
17  Plaintiffs' breach of contract claim against Young in this action cannot be considered
18  substantially similar to any claim asserted by Windblown against Young in the State
19  Court Action.

20  Young has failed to make any showing with respect to the third factor,
21  whether the federal forum is inconvenient.  In fact, the federal forum is not
22  inconvenient to Young.  As an Oregon resident, this Court is no more or less
23  convenient than the state court.  Indeed, the federal forum is arguably more
24  convenient to the parties than the state court in Ventura County, California, since
25  both Plaintiffs' and Young's attorneys are located in Los Angeles, California, where
26  this Court is located.

27  Young alleges that Plaintiffs' have engaged in forum shopping, which he
28  argues warrants abstention.  Yet, Young has presented no evidence whatsoever to

1  support this allegation.  In support of his contention that Plaintiffs have engaged in

2  forum shopping, Young makes the absurd argument that "Plaintiffs Jacobsen and

3  Cummings are clearly trying to restart their litigation, and avoid adverse rulings

4  already made by the court in the State Court Action."   Because Jacobsen and

5  Cummings are not now, and never have been parties to the State Court Action, there

6  have been no adverse rulings against Jacobsen and Cummings in the State Court

7  Action.  Sievers Decl., ¶ 2; Young's RJN, Exhs. 1 and 3.  Nor have there been any

8  rulings on the merits in the State Court Action, let alone any rulings which in any

9  way impact Plaintiffs' claims for declaratory relief and breach of the Letter of

10  Understanding in this action.  As such, Young's forum shopping argument has no

11  merit.

12      The fourth factor, the avoidance of piecemeal litigation, also weighs against

13  abstention.  This factor weighs in favor of abstention only where there is a risk that

14  one or more parties could be exposed to conflicting results.  *Romine v. Compuserve*

15  *Corp.*, 160 F.3d 337, 341 (6th Cir.1998); *American Int'l Underwriters (Philippines),*

16  *Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257-1258 (9th Cir.1988).  Here, there

17  is virtually no risk of conflicting results since the parties to the State Court Action

18  are different from those here, the claims asserted in this action are entirely different

19  from those asserted in the State Court Action, and the agreements at issue in the

20  State Court Action are different from the Agreement in dispute here.   Young's

21  argument that there is a risk of inconsistent results with respect to Young's duty to

22  transfer the motion picture rights to the Book misrepresents the claims asserted by

23  the parties in the State Court Action and in this action.

24      In the State Court Action, Windblown alleges that Young had a contractual

25  duty under the Windblown-Young Agreement to act in concert with Windblown with

26  respect to the disposition of the motion picture rights, and that Young breached that

27  duty by secretly negotiating with third parties regarding the disposition of those

28  rights.  RJN, Exh. 3, ¶¶ 37.  In this action, Jacobsen and Cummings allege that

OPP TO MX TO DISMISS 071910.wpd

Young had a contractual duty under the Letter of Understanding to assign the motion picture rights to the Book to The Shack Movie, LLC, and that he breached that duty by refusing to assign the rights to The Shack Movie, LLC.  FAC, ¶ 47.  There is no risk of inconsistent results with respect to these claims because a finding by this Court that Young had a duty to assign the motion picture rights to the Book to The Shack Movie, LLC would not be inconsistent with a finding by the state court that Young had no duty to act in concert with Windblown with respect to the disposition of the motion picture rights.

In addition, Young's argument that there is a risk of inconsistent results because he claims that certain provisions of the Windblown-Young Agreement and the Letter of Understanding are inconsistent is based on an incorrect interpretation of those agreements.  There is no inconsistency regarding these agreements.  Based on Plaintiffs' and Young's (and Bobby Downes') agreement to jointly develop a motion picture based on the Book, the Letter of Understanding provides that in the event the motion picture rights are sold before a limited liability company is formed for the purpose of exploiting those rights, the receipts shall be divided evenly between Young, Jacobsen, Cummings and Downes.  FAC, Exh. B.  Thus, it was the parties' intention that Young, Jacobsen, Cummings and Downes would equally share any profits received from the exploitation of a motion picture based on the Book.

In the Windblown-Young Agreement, consistent with the parties' agreement that Young, Jacobsen and Cummings are co-authors of the Book and co-owners of the copyright to the Book, it provides that any consideration payable to the Author of the Book in connection with the exploitation of the motion picture rights shall be divided 60% to Young, 20% to Cummings and 20% to Jacobsen, pursuant to their respective contributions to the Book.  Young's RJN, Exh. 3, ¶5(b).  This provision reflects the agreement between Young, Jacobsen and Cummings that, as co-authors of the Book and co-owners of its copyright, any consideration specifically payable

to the Book's authors in connection with the motion picture would be divided in the same manner as other author royalties payable in connection with the Book.

Thus, there is no risk of inconsistent results since the Letter of Understanding relates to compensation payable to Young, Jacobsen, Cummings and Downes in connection with their development of a motion picture based on the Book, while Paragraph 5(b) of the Windblown-Young Agreement concerns the division of compensation payable to the authors of the Book in connection with a motion picture based on the Book.

The fifth factor, priority of proceedings, is neutral in this case.  Courts generally weigh this factor "in terms of how much progress has been made in the two actions."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.  The State Court is still at a relatively early stage.  No trial date has been set, no rulings have been made on the merits in the case, and no depositions have been taken.  In this case, the parties are set to exchange Initial Disclosures on July 26, 2010.  Sievers Decl., ¶¶ 2-7.  Procedurally, the State Court Action has not progressed farther than this case.

The sixth factor, whether state or federal law is controlling, does not support abstention.  This Court has exclusive and original jurisdiction to decide Plaintiffs' first claim for declaratory relief under copyright law.  28 U.S.C. § 1338(a). The fact that state law issues are also present in a case y weighs in favor of surrenduring jurisdiction in "only in some rare circumstances."  *Travelers Indemn. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990).  Claims for breach of contract are not the type of "rare circumstances that support abstention because they are the type of "routine issues of state law" that the district court is fully capable of deciding.  *Id.*   This Court is fully capable of deciding any state law issues that arise in connection with Plaintiffs' second claim for breach of contract.

The final factor for the Court's consideration is the adequacy of the state proceeding to adjudicate Plaintiffs' claims.  As previously discussed, Plaintiffs are

1  not parties to the State Court Action, therefore they lack standing to assert any
2  claims against Young in that proceeding. *Lohnes*, 94 Cal.App.4th at 1153. There
3  is a strong possibility that the state court would deny any application by Plaintiffs
4  to intervene in the State Court Action to assert claims against Young because such
5  an application may be untimely, the court may find Plaintiffs have no direct interest
6  in the issues to be adjudicated in the state court and permitting Plaintiffs to intervene
7  to assert their individual claims against Young would enlarge the scope of the issues
8  to be determined in the case. Therefore, there is substantial doubt as to whether
9  Plaintiffs would be able to resolve their claims against Young in the State Court
10 Action. Where, as here, there is any substantial doubt that the state court litigation
11 will be an adequate vehicle for the complete and prompt resolution of the issues
12 between the parties, it is an abuse of discretion to dismiss a federal case. *Moses H.*
13 *Cone Mem'l Hosp.*, 460 U.S. at 28.

14     On balance, each of the *Colorado River* factors weighs heavily against
15 abstention. There are no "exceptional circumstances" present which would justify
16 abstention, therefore, Young's motion must be denied.

17 **III.   CONCLUSION**

18     For the foregoing reasons, Plaintiffs respectfully request that the Court deny
19 Young's motion to dismiss Plaintiffs' first claim for declaratory relief and to dismiss
20 or stay the second claim for breach of contract.

21
22 DATE: July 19, 2010                          LAVELY & SINGER
                                               PROFESSIONAL CORPORATION
23                                             MARTIN D. SINGER
                                               ALLISON HART SIEVERS
24                                             HENRY L. SELF III

25

26                                             By:_____//s//_____
27                                                ALLISON HART SIEVERS
                                               Attorneys  for  Plaintiffs  WAYNE
28                                             JACOBSEN and BRAD CUMMINGS

OPP TO MX TO DISMISS 071910.wpd                    25